FILED

03/28/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 6, 2016 Session

**STATE OF TENNESSEE v. MARCHELLO KARLANDO GOSSETT**

**Appeal from the Circuit Court for Tipton County**
**No. 8083      Joe H. Walker, III, Judge**

———————————————

**No. W2015-02414-CCA-R3-CD**

———————————————

The Defendant, Marchello Karlando Gossett, was convicted by a Tipton County jury of possession with intent to deliver 0.5 grams or more of cocaine and two counts of felony possession of a handgun and was sentenced to serve thirty years at sixty percent in the Department of Correction.  On appeal, the Defendant contends that: (1) the trial court erred by denying his motion to dismiss the indictment; (2) the evidence was insufficient to support his conviction for possession with intent to deliver 0.5 grams or more of cocaine; (3) the trial court erred by failing to compel the State to disclose information about the confidential informant; (4) the trial court erred in curtailing the Defendant's cross-examination of the confidential informant; (5) the trial court erred in denying his motion for a mistrial; (6) the trial court erred by allowing the State to introduce inadmissible hearsay into evidence; (7) the State committed prosecutorial misconduct; (8) the trial court erred in admitting certain exhibits into evidence when the State failed to establish chain of custody; (9) the trial court erred by failing to charge simple possession and casual exchange as lesser-included offenses; (10) the trial court erred by allowing the State to read the indictment which contained "the name and nature of the Defendant's prior felony conviction"; and (11) cumulative error requires reversal.  Following a thorough review of the record and applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Lauren M. Fuchs and Chelsea A. Harris, Memphis, Tennessee, for the appellant, Marchello Karlando Gossett.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Indictment No. 7824*

This appeal arises from a controlled drug buy between the Defendant and a confidential informant on May 14, 2013, and the execution of a search warrant at the Defendant's residence that same afternoon. Based on evidence found during the search, the Tipton County Grand Jury indicted the Defendant on November 4, 2013, for the following offenses:

| Count | Offense | Classification | Offense Date |
|---|---|---|---|
| 1 | Simple possession of a Schedule VI controlled substance, to wit: marijuana | Class A misdemeanor | May 14, 2013 |
| 2 | Simple possession of a Schedule V controlled substance, to wit: codeine | Class A misdemeanor | May 14, 2013 |
| 3 | Felony possession of a handgun | Class D felony | May 14, 2013 |
| 4 | Felony possession of a handgun | Class D felony | May 14, 2013 |
| 5 | Possession of a Schedule II Controlled Substance, to wit: Cocaine, with intent to deliver in the amount of 0.5 grams or more | Class B felony | May 14, 2013 |
| 6 | Possession of a Schedule II Controlled Substance, to wit: Cocaine, with intent to deliver in the amount of 0.5 grams or more, having been convicted of three prior Class B felonies under Tenn. Code Ann. § 39-17-417 | Class B felony | May 14, 2013 |
| 7 | Possession of drug paraphernalia | Class A misdemeanor | May 14, 2013 |

The Defendant filed several pre-trial motions, including a motion to exclude Tennessee Rule of Evidence 404(b) evidence at trial and a motion to reveal the identity of the confidential informant. At a pre-trial motions hearing, the following exchange took place regarding the motions:

[Defense Counsel]: . . . I believe the State's primary argument in the withholding of the identity of the confidential informant is that as uncharged conduct it's not relevant to the proceedings. Therefore, Your Honor I have prepared a Motion to Exclude Any and All Evidence in Relation to the Confidential Buy. If it's not relevant to this proceeding, then it shouldn't come in in any shape, fashion, or form.

[The State]: I agree.

[Defense Counsel]: If I may pass this forward.

[The Court]: I think the State agrees with your motion.

[Defense Counsel]: . . . So Your Honor is granting this Motion at this time, the Motion to Exclude under 404(b)?

[The Court]: Does the State intend to introduce any evidence?

[The State]: No, sir, Your Honor, unless [the Defendant] takes the stand and says something like, I never sell cocaine, or something like that. As far as our case-in-chief we don't intend to put on any proof. We think the search warrant stands on its own, and we don't try to bolster it for that matter.

[The Court]: Okay. The Court would not anticipate the State attempting to do that, but if they did do that and you made objection, and if you're making a pre[-]trial motion to exclude that, under the circumstances as stated by the State, the Court would have to rule on that at a later time. But during the case-in-chief the Motion to Exclude Prior Illegal Acts Under Rule 404(b) would be granted absent a jury-out hearing to show a need.

But in past experience at least, the State has not attempted to introduce any evidence with regard to the buy upon which a warrant was issued, and I wouldn't anticipate any in this trial. But if it does, I will grant your Motion with regard to that.

In a written order, the trial court later granted the Defendant's motion to exclude Rule 404(b) evidence, stating:

> The [D]efendant moves per Rule 404 to limit evidence of the prior delivery alleged in the affidavit of the warrant. The State indicated that it did not intend to introduce such evidence in the trial of the indicted offense[s].
>
> The motion is granted, and the requirements of [Rule] 404 as to a jury out hearing are required prior to any attempt to introduce evidence of prior illegal acts of the [D]efendant.

However, the trial court denied the Defendant's motion to reveal the identity of the confidential informant. The trial court reasoned:

> The identity of the informant need not be revealed unless a witness at the execution of the search warrant at the defendant's residence, or material to the defendant's defense. The defendant has shown neither.
>
> Our Supreme Court has determined that the identity of a confidential informant is generally privileged from discovery. House v. State, 44 S.W.3d 508. Disclosure shall be denied when a defendant's sole purpose of discovering a confidential informant's identity is to challenge the validity of a search warrant. . . . The motion to reveal the identity of the informant mentioned in the affidavit of the search warrant is denied.

*April 3, 2014 Trial*

The Defendant's trial in case number 7824 began on April 3, 2014. After voir dire but before the jury was sworn, the State requested that the trial court rule on a 404(b) motion "about some prior acts of the Defendant[.]" The State argued:

> [T]here was a search warrant executed at 7673 Richardson Landing in Drummonds in Tipton County by the Tipton County Sheriff's Office and that it was based on a controlled buy which happened, according to the search warrant, within 72 hours of the execution on May 14, which was in the afternoon of May 14, 2013.
>
> At the execution of the search warrant there was found to be buy money from the sale of $70 worth of cocaine, which actually was analyzed by the TBI lab to be 0.25 grams. There was some text messaging back and forth on that day of May 14 between [the Defendant] and the undercover person,

who was [the confidential informant] and the purchase was made actually that morning. And on the execution of the search warrant the very pre-recorded $70 in miscellaneous currency, which will be described, was found under [the Defendant] while he was asleep on the bed.

So we have the situation in this case, obviously the important element as far as the State is concerned, and certainly the [D]efendant, is how this cocaine, which was obtained on the execution of the search warrant, was possessed. Was it simple possession? Was it possession with intent?

And the officer who is available to testify would testify regarding the purchase which was in the morning of May 14, 2013, for which he has actually the pre-recorded money used in that purchase which was found under [the Defendant]. He can testify about his observance of the transaction on a video which was obtained as a result of this undercover buy, which was also the basis of the search warrant.

In addition to this, Your Honor, there was a series of drug transactions about which Investigator [] Chunn can testify. One was on May 8, 2013, for $90 worth of crack cocaine, which was purchased from [the Defendant]. Again, he, the officer, viewed the videotape of this transaction involving the same confidential source.

On May 9, 2013, Investigator Chunn was involved in an undercover buy from [the Defendant] for what was analyzed to be 0.61 grams of crack cocaine, again involving the same confidential source and [the Defendant].

All of these purchases were at 7673 Richardson Landing.

Also there was a purchase on the next day May 10, 2013, from [the Defendant], using the same confidential source, involving Investigator [] Chunn. Again, videotapes on all of these transactions and lab report[s] on all of these transactions. In this case, 0.37 grams of cocaine.

In all of the cases the officer was involved in the controlled buy, monitored the situation, and viewed the videotapes.

We think that all of these transactions should be admissible, the events of May 8, May 9, May 10, but certainly, certainly the event of May 14, in that that recorded money was actually found under [the Defendant] when the search warrant was executed.

- 5 -

Under 404(b), Your Honor, there are a lot of cases for the proposition that prior events of drug selling are admissible on charges of drug selling or possession with intent.

The State continued:

We think it would be a disservice to the State and not unduly burdensome on the [D]efendant that evidence should come in that when the search warrant was executed on the afternoon of May 14, the officers found all of the recorded currency which had been used in the purchase of cocaine from [the Defendant] hours before, for which there was a videotape of that transaction and for which there was a lab report that indicated 0.25 grams of Schedule II cocaine. We think it's highly relevant, Your Honor, to the only real issues in the case, in the State's opinion, which is the intent of the [D]efendant.

The State then proposed:

I would offer for [the Defendant's] consideration by his lawyer and in consultation with him that the State—what the State intends to do is in July to indict [the Defendant] for the facts in 7824 and also those at this point uncharged events of May 8, 9, 10, and 14. The State is going to do that.

If [the Defendant] is agreeable to just going forward with that information on the prior sale of May 14 coming in, then the State will never charge him further on the other events; that is, there will be evidence of a May 14 delivery, but he will not be further charged in that case, nor on the events of May 8, 9, and 10.

…

So in other words, we could go—the State would be willing to go forward today if we get in that evidence. Otherwise, the State would move to [dismiss] the case with the clear understanding by [the Defendant] we're going forward with everything in July, or attempting to.

Defense counsel responded that "this would be a very different conversation if [she] had ever been allowed in the past to ask anything about the confidential informant's buy." Defense counsel stated that she had no information about "other buys on May 8, 9, and 10." Moreover, defense counsel stated that she had not been provided the text

messages between the Defendant and the confidential informant or the video of the drug buy from May 14, 2013. Defense counsel argued that, if the Rule 404(b) evidence that the trial court had previously ruled was inadmissible was allowed to be introduced at trial, the defense would be "completely unprepared" and "forced to move for a continuance[.]"

The trial court allowed the Defendant time to discuss the matter with defense counsel during a lunch break. Following the break, defense counsel announced that the Defendant would not stipulate to the introduction of the evidence. Defense counsel stated:

> [I]t's the defense's position that at this point I could not go forward, I could not consent to go forward on trial today with information about the alleged buy, because I don't have any information about the marked money at all. If the State wants to provide me with the information that they intend to present and allow me an opportunity to review it and know whether or not I could in fact go forward with trial based on that information, then I would ask the Court for a continuance to do that. But short of that opportunity, I could not provide effective assistance with so little knowledge about a vital aspect of this case.

The trial court sustained the Defendant's objection to the admission of the evidence "due to the way the case had developed up to that point." Upon the trial court's ruling, the State entered a nolle prosequi in case number 7824, with the expressed intent to re-indict the Defendant in July 2014.

*Indictment No. 8083*

On July 7, 2014, the Tipton County Grand Jury indicted the Defendant for the following offenses:[1]

| Count | Offense | Classification | Offense Date |
|-------|---------|----------------|--------------|
| 1 | Delivery of a Schedule II Controlled Substance, to wit: Cocaine, in the amount of 0.5 grams of more | Class B felony | May 8, 2013 |
| 2 | Delivery of a Schedule II Controlled Substance, to wit: Cocaine, in the amount of 0.5 grams of more | Class B felony | May 9, 2013 |

---

[1] Before trial, the State dismissed Count 5, and the Defendant requested a severance of offenses. The trial court granted the motion for severance, and the Defendant was tried on only Counts 4, 6, 7, 8, and 9—the offenses that occurred on May 14, 2013.

| 3 | Delivery of a Schedule II Controlled Substance, to wit: Cocaine, in the amount of less than 0.5 grams | Class C felony | May 10, 2013 |
|---|---|---|---|
| 4 | Delivery of a Schedule II Controlled Substance, to wit: Cocaine, in the amount of less than 0.5 grams | Class C felony | May 14, 2013 |
| 5 | Possession of a Schedule II Controlled Substance, to wit: Cocaine, in the amount of 0.5 grams or more with intent to deliver | Class B felony | May 8, 2013 |
| 6 | Felony Possession of a Handgun | Class D felony | May 14, 2013 |
| 7 | Felony Possession of a Handgun | Class D felony | May 14, 2013 |
| 8 | Possession of a Schedule II Controlled Substance, to wit: Cocaine, with intent to deliver in the amount of 0.5 grams or more | Class B felony | May 14, 2013 |
| 9 | Possession of a Schedule II Controlled Substance, to wit: Cocaine, with intent to deliver in the amount of 0.5 grams or more, having been convicted of three prior Class B felonies under Tenn. Code Ann. § 39-17-417 | Class B felony | May 14, 2013 |

Following his indictment, the Defendant was held without bond. At his arraignment on July 22, 2014, the trial court set the Defendant's bond at $100,000, and the case was set for trial on November 25, 2014. On September 11, 2014, the Defendant filed a motion to reduce bond. At a hearing on October 10, 2014, the trial court denied the motion to reduce bond but granted a defense motion to continue the trial based "on advice of [defense counsel's] doctor due to [defense counsel's] pregnancy" and reset the trial to March 23, 2015.

*Motion to Dismiss Indictment No. 8083*

On November 3, 2014, the Defendant filed a motion to dismiss the indictment based on "a denial of right to a speedy trial, a violation of his due process rights, and vindictive prosecution." At a hearing, the Defendant testified that he was arrested on May 14, 2013, on the charges in case number 7824 and that his family posted a $10,000

bond. He was arrested on a probation violation[2] based on these new charges on July 23, 2013, and he had been incarcerated continuously since that date. The Defendant recalled that, after a preliminary hearing, the trial court raised the Defendant's bond so that the Defendant could receive jail credit. The Defendant testified that while incarcerated he had anxiety about going to trial and about his charges. He stated that he had been in custody for sixteen or seventeen months and had not been able to hold his children during that time. The Defendant stated that he had been prepared for trial on April 3, 2014; however, the State dismissed the case after jury selection when the Defendant refused to agree to the admission of evidence of additional crimes. The Defendant said that his counsel had not been given any information regarding the additional offenses that the State wanted to introduce, so counsel was unable to go forward with the trial.

The Defendant testified he was granted parole for his prior cases on July 10, 2014. He recalled that the trial court denied the Defendant's motion for the State to reveal the identity of the confidential informant during a pre-trial hearing in case number 7824. He denied that he knew the name of the confidential informant. The Defendant also denied that the State made an offer that the Defendant "stipulate" to the admission of certain evidence. He explained:

> It wasn't a stipulation. It was a choice as far as whether we would allow inadmissible evidence in a trial that my attorney didn't know anything about, or, you know, or else I would be facing new charges that also were unknown . . . .

The trial court denied the motion to dismiss. Regarding the Defendant's allegation of a speedy trial violation, the trial court found that the Defendant was indicted in July 2014, and the case was originally set for trial in November 2014. The case was then reset for the next term at the Defendant's request. The trial court found that the Defendant's seventeen-month incarceration had not been "due to this case." The trial court reasoned:

> At the time of the alleged commission of the crimes in May 2013, the [D]efendant was on probation in . . . 6236 and . . . 6121. A warrant to revoke was filed and after a hearing, probation was revoked. He was given credit in those two cases for time served. He has been incarcerated in TDOC on the [eight] year sentences. He was paroled July 10, 2014. Since July, he has not ma[d]e bond. [The] Defendant moved to continue the trial until next term in 2015, which request was granted.

---

[2] It appears from the record that the Defendant was on probation in case numbers 6236 and 6121 at the time he committed the instant offenses.

- 9 -

The trial court determined that the Defendant had not shown any prejudice caused by the delay. The court stated that the length of delay "ha[d] not been extensive." The trial court found "no due process violation by the State for the delay caused by the dismissal of the charges . . . and the new indictment of additional charges in . . . 8083." Additionally, the trial court found that the indictment should not be dismissed for unnecessary delay under Rule 48 of the Tennessee Rules of Criminal Procedure.

Regarding the Defendant's claim of prosecutorial vindictiveness, the trial court found that the State "wished to introduce at the trial the fact that marked money from the drug buy was found in the house. The defendant did not agree." The trial court explained that the new charges in case number 8083 were based on additional drug deals by the Defendant that the State had been aware of but had not charged the Defendant with in case number 7824. The court found that the Defendant had not shown that these additional charges were brought solely to penalize the Defendant. The trial court found that the State had indicated an intention to charge the Defendant with the additional drug transactions but made "an offer to escape prosecution." The trial court stated that the offer by the State "was more in the form of negotiation" and determined that the additional charges were "a proper exercise of prosecutorial discretion." Accordingly, the trial court denied relief.

### March 23, 2015 Trial

The Defendant's trial began on March 23, 2015. On that day, the parties selected a jury, and two witnesses testified. However, on the morning of March 24, defense counsel was ill and could not continue. The trial court declared a mistrial the following day due to the continued illness of defense counsel. The trial court reset the case for trial on April 13, 2015.

### April 13, 2015 Trial

The trial court bifurcated the Defendant's trial so that the jury would not know the Defendant's status as a convicted felon until the second phase of trial when the jury considered the charges of felony possession of a handgun in Counts 6 and 7. During the first phase of the Defendant's trial, Brent Chunn, a narcotics investigator with the Tipton County Sheriff's Office, testified that he conducted several controlled buys in 2013 using a confidential informant ("the CI"). Investigator Chunn recalled that, on May 14, 2013, he and his partner, Investigator Michael Green, met with the CI at the Drummonds Fire Department around 11:00 a.m. The CI said that he was going to purchase $70 worth of crack cocaine from the Defendant. Investigator Chunn equipped the CI with a "button camera" to record the transaction and provided the CI with $70, which Investigator Chunn had previously photocopied. Investigator Chunn instructed the CI to drive to the

Defendant's location, purchase the crack cocaine, and then call Investigator Chunn when leaving the location. Investigator Chunn searched the CI and his vehicle before the CI left the fire department for the Defendant's residence on Richardson Landing Road. Driving an unmarked police car, Investigator Chunn followed one to two minutes behind the CI. When he passed the Defendant's address, Investigator Chunn saw the CI's vehicle at the Defendant's residence.

Investigator Chunn testified that, following the transaction, he again met with the CI at the fire department. The CI did not have the $70 worth of buy money, and Investigator Chunn recovered from the CI approximately 0.25 grams of a white rock-like substance, which appeared to be crack cocaine. Investigator Chunn testified that he placed the substance into a sealed evidence bag and turned it over to the evidence technician for the sheriff's office, Deputy John Turner. Investigator Chunn also reviewed the videotape of the transaction. Investigator Chunn explained that the videotape showed that the CI drove to the Defendant's residence on Richardson Landing Road, where he waited for the Defendant's arrival. Investigator Chunn stated that the videotape did not show an exchange of narcotics or money between the CI and the Defendant. However, from a still shot taken from the videotape of the drug buy, Investigator Chunn identified the Defendant's charcoal-gray Chevrolet Tahoe. Investigator Chunn stated that he saw the vehicle at the residence when he returned to execute a search warrant that afternoon.

Investigator Chunn testified that he and other members of the sheriff's office forcibly entered the Defendant's residence in order to execute the search warrant. After securing the residence, officers videotaped the premises as they searched. Investigator Chunn recalled that they found the Defendant inside the residence, asleep in his bedroom. On the Defendant's bed under a pillow, Investigator Chunn found the $70 of buy money with the Defendant's driver's license folded up inside the money. He found additional cash in a pair of the Defendant's pants, for a total of "roughly 300 bucks . . . in fives and tens and twenties[.]" Additionally, Investigator Chunn found a substance in a clear cellophane bag, which field-tested positive for cocaine. Investigator Chunn placed the evidence into a sealed envelope at the scene, which he identified at trial. He testified that he transported the envelope back to the sheriff's office where he gave it to Deputy Turner to be logged as evidence. On a dresser near the Defendant's bed where Investigator Chunn found the crack cocaine, he also found a set of digital scales, which he testified were commonly used for "weighing out of narcotics[.]" In a nightstand beside the Defendant's bed, Investigator Chunn located two handguns—a Kel-Tec 9mm and a Savage Arms .357 revolver—which he collected and turned over to Deputy Turner. Officers also searched the Defendant's Chevy Tahoe and towed it to the sheriff's office's seizure lot. Investigator Chunn identified a copy of a vehicle tow-in report, which the sheriff's office used for "disabled vehicles, accident, or seizures." He noted that the tow-in report listed the registered owner of the Chevy Tahoe as the Defendant's wife, Jeanetta

Pearson, and the document was admitted into evidence as an exhibit. Investigator Chunn stated that no drugs or drug paraphernalia were found inside the vehicle.

Based on his five years of experience as a narcotics investigator, Investigator Chunn testified that 4.79 grams of crack cocaine was worth "roughly $400 to $500" in the area of the Defendant's residence at the time of the offenses. He stated that an "eight-ball" was around three grams of cocaine, and he estimated that an eight-ball sold for about $250 in Drummonds in 2013. Investigator Chunn stated that an "average" sale of crack cocaine in that area would be for 0.5 or 0.6 grams and would cost "[b]etween $80 and $100[.]" Investigator Chunn testified that, based upon his experience, the items found inside the Defendant's residence—a digital scale, 4.79 grams of crack cocaine, and cash money in small denominations—was indicative of possession with the intent to deliver.

On cross-examination, Investigator Chunn testified that the Defendant's twelve or thirteen-year-old daughter lived at the residence and that Ms. Pearson "frequent[ed] the residence." The investigator stated that he found a small amount of marijuana and liquid codeine in the Defendant's residence and agreed that such an amount would be considered for "personal use." He testified that he found no ammunition for the handguns in the residence or in the Defendant's vehicle. Additionally, Investigator Chunn found no drugs individually packaged for resale during the execution of the search warrant. He testified that he never used the CI as a confidential informant against anyone other than the Defendant due to the CI's theft convictions.

The CI testified that he worked for the Tipton County Sheriff's Office as a confidential informant on May 14, 2013. On that day, he met Investigator Chunn at the Drummonds Fire Department where Investigator Chunn provided him with buy money and placed a camera on his shirt. The CI testified that, after leaving the fire department, he drove about five to seven minutes to the Defendant's residence on Richardson Landing Road.

The CI testified that he and the Defendant exchanged several text messages leading up to the controlled buy. From photographs of his cell phone, the CI identified the text messages, which stated:

> [The CI]: You going to be ready about 1:30?
>
> . . .
>
> [The Defendant]: Yeah, ready.

. . .

[The CI]: 1:30 for sure?

[The Defendant]: Yeah, ready.

[The CI]: Be ready in an hour.

Despite indications from the text messages that the CI planned to meet the Defendant around 1:30 p.m., the CI testified that he actually arrived at the Defendant's residence at 11:00 a.m. When he arrived, he went to the front door and knocked, but the Defendant was not home. The CI called the Defendant, and the Defendant was "kind of frustrated with [the CI] . . . because [he] had no patience." The State played the videotape of the transaction, and the CI identified the Defendant's truck on the videotape. The CI stated that, while the videotape was recording, he called the Defendant. He stated that the Defendant answered and told the CI that he would "be there in a minute." The CI stated that, when the Defendant arrived, he walked over to the Defendant's truck and gave the Defendant the $70 of buy money. The Defendant went into his house while the CI waited at the front door for five to seven seconds. The Defendant then came back outside with a quantity of crack cocaine, which he handed to the CI. The CI testified that the transaction cannot be seen on the videotape. However, he stated that the buy occurred "at the time when [the Defendant] came out the door, you could see a glimpse of him. And right when he would have came [sic] out, he would have gave [sic] it to me." The CI confirmed that he was searched by investigators both before and after the controlled buy. He stated, "Usually when I would get back on this occasion I would be almost strip searched."

The CI identified a still photograph from the videotape. He stated that the photograph showed the Defendant and the Defendant's vehicle, which was parked on the Defendant's front yard. The CI stated that, after the transaction, he returned to the Drummonds Fire Department and gave the crack cocaine to Investigator Chunn. He stated that he did not make any stops between the Defendant's residence and the fire department.

On cross-examination, the CI agreed that he approached the police to work as a confidential informant and that he chose the Defendant as the target of the controlled buy. He agreed that he had previously been convicted of felony theft and was convicted of several felonies after he worked as a confidential informant for the sheriff's office. Specifically, the CI testified that he pleaded guilty to burglary and felony theft in November 2013 and that he received three years' probation for the offenses. Defense counsel then attempted to question the CI further about his convictions, as follows:

[Defense Counsel]: In Count 3 you pled to theft of property one thousand to ten thousand?

[The CI]: Yes.

[Defense Counsel]: And that was a separate person from that theft?

[The State]: Objection, Your Honor, as to people involved. It's irrelevant. He can be asked about convictions, not about the details of it.

[The Court]: The objection will be sustained.

Ladies and gentlemen, whether someone has a prior conviction can be considered to test the credibility of the witness, and that's the purpose for allowing those type of questions.

The CI, who was in jail on new charges, stated that the State had not promised him anything in exchange for his testimony. When asked if he was hoping to get out of jail, the CI stated, "I don't think I will." The following exchange then took place:

[Defense Counsel]: Okay. So I'm asking you, what is supposed to happen on your court date?

[The State]: Your Honor, that's improper impeachment I believe.

[The Court]: The Court agrees. That's arraignment day. The objection will be sustained.

The trial court also sustained an objection by the State when the Defendant asked the CI, "And what's the case that you're currently incarcerated on?"

Michael Green testified that in May 2013 he worked as a narcotics investigator for the Tipton County Sheriff's Office. On May 14, he and Investigator Chunn met with the CI at the fire department where they equipped the CI with a camera and provided him with $70 worth of pre-recorded money. They searched the CI and his vehicle. The investigators then followed the CI as he drove to the Defendant's residence. Investigator Green recalled that he and Investigator Chunn stopped at a location nearby, and Investigator Chunn called the CI to see if the Defendant was at the residence. When the CI told Investigator Chunn that the Defendant was not home, Investigators Green and Chunn "drove by and saw [the CI] parked in the [the Defendant's] driveway."

- 14 -

Investigator Green testified that, several minutes later, he saw the Defendant's vehicle pass by where he and Investigator Chunn were parked. They followed the Defendant's vehicle and saw it parked at the residence after the deal had taken place. Investigator Green then returned to the fire department where he and Investigator Chunn recovered crack cocaine and the recording device from the CI. Investigator Green again searched the CI and the CI's vehicle and found that he did not have the pre-recorded money.

Investigator Green testified that he returned to the Defendant's residence later that afternoon to execute a search warrant. Officers "[k]nocked and announced" and then entered the residence. The Defendant was asleep in his bedroom and was taken into custody. Investigator Green recalled that he found several items of contraband during the search of the residence, including an amount of crack cocaine; a small amount of marijuana; two handguns; battery operated scales which were commonly used in the sale of narcotics; and plastic baggies. He testified that Investigator Chunn collected the items as evidence. Investigator Green recalled that the two handguns were discovered in a nightstand beside the Defendant's bed. He stated that the crack cocaine and scales were located "in close relation with each other" on the other side of the bedroom. Additionally, once the Defendant was removed from the bed, Investigator Green found money underneath the Defendant's pillow "or maybe where [the Defendant's] arms had been." Investigator Green testified that, based on his five years of experience as a narcotics investigator in Tipton County, "[Y]our average crack user is going to buy anywhere from a half a gram to a gram, and it will run from generally a hundred dollars a gram." He stated that 4.79 grams of crack cocaine was "definitely . . . a resale amount" and would have been worth about $1,100. Investigator Green then explained that his estimate of the value of the crack cocaine found inside the Defendant's residence was based on the amount the CI paid the Defendant for only 0.25 grams.

On cross-examination, the following exchange occurred:

Q: Okay. Now, you didn't actually witness any drug transaction that day, did you?

A: Yes, I did.

Q: When did you witness a drug transaction?

A: On the video.

Q: You saw a drug transaction on the video?

A: I heard what I knew to be a drug transaction.

Defense counsel requested a bench conference and asked that the trial court provide a curative instruction because the State "opted not to[] include the audio." The trial court instructed the jury, "Ladies and gentlemen, the witness—witnesses need to respond to the questions asked. I'll ask the witness, if you would, please listen to the question and respond to that question."

Investigator Green agreed that he had not seen the drug transaction and that the transaction was not visible on the videotape. He further agreed that he did not see the Defendant at the residence at the time that the CI was there. Investigator Green testified that an eight-ball was considered a large amount of cocaine worth about $350. He said that generally a user was "not going to be able to afford an eight[-]ball."

On redirect, Investigator Green testified that he knew the Defendant's voice and the CI's voice. He stated that he had the opportunity to watch and listen to the videotape of the transaction. The State asked, "In reviewing the tape did you hear a conversation involving only [the CI] and [the Defendant] at this address?" Defense counsel requested a bench conference, where the following exchange took place:

[Defense Counsel]: Your Honor, he's going into the audio that we just talked about was not allowed in.

[The Court]: Well, at defense request, because of extraneous things the undercover agent said on the ride out and the ride back, you made a motion for the State not to play the audio, and the Court—the State agreed to that. But the Court never ruled that the audio couldn't be played or any portion of it couldn't be testified to by any witness.

[Defense Counsel]: Because, Your Honor, the State agreed to the motion. At this point [the CI] has already testified, and I'm now losing my chance to confront him about whatever he is about to say.

[The State]: He is subject to recall.

[Defense Counsel]: I didn't get to cross-examine him, and I think it's inappropriate.

[The Court]: Well, it's my understanding—I haven't heard the audio, for the benefit of the record. But it's my understanding that the video was played because the [D]efendant objected to things said by the undercover agent, [the CI], on the ride to the [D]efendant's house and on

- 16 -

the ride back that were not interchanges with the [D]efendant; this is, that he was having some kind of monologue, and the State agreed not to play the audio because of that monologue. But I've never ruled the State couldn't ask what was the –what conversations occurred between the [D]efendant and the CI.

Defense counsel then raised a hearsay objection to the witness testifying to anything the CI may have said on the videotape. Defense counsel recognized that the witness could testify to the Defendant's statements but argued that the CI's statements were inadmissible hearsay because they were offered for the truth of the matter asserted. The State responded that they were not offered for the truth of the matter asserted but "[t]o add relevance to the response of the defendant which is an admission against interest." The trial court ruled that the State could ask Investigator Green what he heard on the videotape during the exchange between the Defendant and "anyone else . . . or that portion of the tape could be played, either one."

Following the trial court's ruling, the State questioned Investigator Green as follows:

Q: What did you hear said that made you draw the conclusion that you heard a drug transaction?

A: Well, it was several things. He called, and it was just . . . it's obvious what it was. You know, Where you at? I'm coming. He gets there. The exchange is done. I don't remember the exact words, but the transaction is done. And then [the CI] asks about an amount that he might be wanting [sic] to get later on."

Investigator Green testified that he concluded the recorded exchange between the Defendant and the CI was a drug transaction based on his experience as a narcotics investigator.

Deputy John Turner of the Tipton County Sheriff's Office testified that he had worked as the evidence custodian for the sheriff's office for the last twelve years. Regarding the instant case, Deputy Turner testified that on May 14, 2013, he received approximately 0.4 grams of a white rock-like substance from Investigator Chunn. Deputy Turner identified the property envelope that contained the substance and stated that he had filled out and dated the envelope. Deputy Turner then identified a second property envelope which contained approximately five grams of a white rock substance inside a plastic bag. Deputy Turner testified that he received this second piece of evidence from Investigator Chunn on May 16, 2013. On May 17, Deputy Turner took

both substances to the Tennessee Bureau of Investigation crime lab in Memphis. He stated that he received the evidence back from the crime lab on July 31, 2013, and he returned the substances to the evidence room at the sheriff's office. Deputy Turner agreed that the evidence had been in the custody of the Tipton County Sheriff's Office since that time.

Deputy Turner also identified two handguns—a Kel-Tec 9mm handgun and a Savage Arms .357 magnum caliber revolver—which he received from Investigator Chunn on May 16, 2013, and placed in the evidence safe at the sheriff's office. Deputy Turner testified that the handguns were not sent to the crime lab and remained in his custody. He said that he test-fired both handguns and that the weapons "fired successfully."

Investigator Chunn was recalled by the State. He identified the Kel-Tec 9mm handgun as being the gun he found at the Defendant's residence during the execution of the search warrant on May 14, 2013. He confirmed that it was the same handgun he turned over to Deputy Turner. Investigator Chunn also identified the Savage Arms .357 revolver and stated that it was the same weapon he recovered from the Defendant's residence and turned over to Deputy Turner. Next, Investigator Chunn identified a clear plastic baggie that contained "approximately five grams of a rock-like substance," which he stated he recovered from a dresser in the Defendant's bedroom and turned over to Deputy Turner. Investigator Chunn also identified a white envelope containing an amount of crack cocaine. He testified that he obtained the crack cocaine from the CI after the controlled buy and turned it over to Deputy Turner.

Special Agent Shalandus Garrett, a forensic scientist at the TBI crime lab and expert in drug identification, testified that she received several items of evidence from Deputy Turner in connection with the case. She identified a white envelope, based on markings from the lab, and explained that she had analyzed the contents of the envelope. Based on her analysis, Agent Garrett concluded that the substance inside the white envelope[3] was "cocaine base, also known as crack cocaine, in the weight of 0.25 grams." She further stated that cocaine base was a Schedule II controlled substance.

After the trial court admitted the white envelope into evidence, defense counsel requested a bench conference, during which the following exchange occurred:

> [Defense Counsel]: Officer Chunn never identified the contents of the envelope.

---

[3] The white envelope was admitted into evidence as Exhibit 18.

[The Court]: Ma'am?

[Defense Counsel]: Officer Chunn never identified the contents of the envelope. I guess my objection is to chain of custody again.

. . .

[The State]: Yes, sir. Your Honor, he's testified that that is the envelope in which he placed the contraband, and which he sealed to it, and which he gave sealed to his evidence technician, who testified that that was that which he sent sealed to the TBI lab, and there it is.

[Defense Counsel]: But he didn't identify the contents as coming from the scene to being put in the envelope.

[The State]: I believe that he testified that he did it and put it in a sealed envelope, which you can't see.

[Defense Counsel]: But he still has to identify the drugs.

. . .

[The Court]: The objection will be overruled.

[The State]: All right.

[The Court]: The Court finds there is adequate chain of custody.

Agent Garrett next identified a clear plastic bag[4] based on her initials which were written across the bottom seal and the lab case number. She stated that she analyzed the white rock-like substance contained inside the bag and found that it was 4.79 grams of cocaine base, a Schedule II controlled substance. Agent Garrett testified that she returned both items of evidence to Deputy Turner after the completion of testing. On cross-examination, Agent Garrett agreed that she did not know anything about the circumstances of the collection of the items.

At the conclusion of proof, the parties discussed during a jury-out hearing whether the trial court should instruct the jury on the misdemeanor offenses of simple possession and casual exchange. The Defendant presented the trial court with a written request for

---

[4] The clear plastic bag was admitted as Exhibit 20.

- 19 -

jury instructions on simple possession and casual exchange as to the charge of delivery of cocaine less than 0.5 grams and on simple possession for the charge of possession with intent to sell or deliver over 0.5 grams of cocaine. The trial court ruled that a conviction for the misdemeanor "would be a nullity" and that it could not charge simple possession because the statute of limitations had run on the misdemeanor offense. Defense counsel responded:

> Your Honor, just for the record, the effect of the statute of limitations preventing the jury from being able to consider the misdemeanor, Your Honor, I would submit compounds the error submitted in the Motion to Dismiss and most certainly fulfills a prejudice requirement for not charging those charges initially and for waiting until asking to introduce previously excluded evidence at the last trial.

Defense counsel then asked the trial court if she would be permitted to argue the misdemeanors to the jury, and the trial court stated that the Defendant could argue to the jury "anything the facts show[.]" Accordingly, in closing argument, defense counsel argued that the Defendant possessed the drugs for personal use.

Following deliberations, the jury found the Defendant guilty of possession of cocaine with intent to deliver in an amount over 0.5 grams as charged in Count 8.[5] The jury was unable to reach a verdict in Count 4—on the charge of delivery of less than 0.5 grams of cocaine—and the trial court declared a mistrial as to that count.

Prior to the start of the second phase of trial, defense counsel asked the trial court to accept the Defendant's stipulation as to his status as a felon for purposes of the felony possession of a handgun charges in Counts 6 and 7. The trial court indicated that it would accept the stipulation if the Defendant wished to plead guilty to the offenses; however, the Defendant stated that he wanted to proceed to trial on Counts 6 and 7. The trial court stated it would restrict the State to introducing proof on only one of the Defendant's prior felony convictions.

Defense counsel also objected to the State's reading of the indictment for Counts 6 and 7, which stated in part that the Defendant had been previously convicted of "delivery of Schedule II, five-tenths grams or more on July 27, 2009, Circuit Court of Tipton County, Docket Number 6236, which is a B felony conviction." However, the trial court overruled the Defendant's objection, stating, "The Court doesn't see prejudice in this

---

[5] In a jury-out hearing, defense counsel announced that the Defendant would stipulate that he had three prior B felony convictions as alleged in Count 9. The trial court accepted the Defendant's stipulation and did not submit Count 9 to the jury.

particular case for the jury knowing the type of conviction when they're not considering that same type conviction." At a bench conference, the Defendant then stipulated as to the Defendant's conviction in case number 6236 so that the State would not admit a certified copy of the conviction into evidence.

During the second phase of the Defendant's trial, Investigator Chunn identified a second track on the videotape of the execution of the search warrant at the Defendant's residence that showed a nightstand located on the left side of the Defendant's bed. Inside the drawers of the nightstand, Investigator Chunn found both the Kel-Tec 9mm and Savage Arms .357 revolver underneath some clothing. Investigator Chunn testified that both handguns were found "[w]ithin inches of the bed" where the Defendant was located. He further stated that the Defendant was the only individual inside the house when officers arrived at the residence that afternoon. Based on this proof, the jury found the Defendant guilty of two counts of felony possession of a handgun.

At a subsequent sentencing hearing, the trial court sentenced the Defendant, as a Range II multiple offender, to four years at thirty-five percent each for felony possession of a handgun in Count 6 and Count 7. For the conviction for possession with the intent to deliver 0.5 grams or more of cocaine in Count 8, the trial court found that the Defendant was an Habitual Drug Offender under Tennessee Code Annotated section 39-17-417(l)(3) and sentenced the Defendant, as a career offender, to thirty years at sixty percent.[6] The trial court ordered all counts to run concurrently for a total effective sentence of thirty years at sixty percent in the Department of Correction.

Thereafter, the Defendant filed a timely motion for new trial, which was denied by the trial court following a hearing. This timely appeal follows.

**Analysis**

I. Motion to Dismiss Indictment No. 8083

*A. Speedy Trial Violation*

On appeal, the Defendant contends that the trial court erred by denying his motion to dismiss indictment number 8083 because his right to a speedy trial was denied. He contends that, in order to gain a tactical advantage, the State deliberately delayed his trial for seventeen months by dismissing indictment number 7824 on the first day of trial when defense counsel would not consent to the admission of evidence that was "previously withheld during the discovery phase and ruled inadmissible by the trial

---

[6] The trial court merged Counts 8 and 9.

court[.]" The Defendant argues that he was prejudiced by the delay because he had to "grapple with the anxiety and fear associated with pending criminal charges[.]" Moreover, the Defendant asserts that because he was incarcerated he was unable to gather evidence or assist in the preparation of his defense. The State responds that the Defendant was not denied the right to a speedy trial.

Both the United States and Tennessee Constitutions guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Tenn. Const. Art. I § 9. Tennessee also has a statutory right to a speedy trial. See Tenn. Code Ann. § 40-14-101. The right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of the trial. United States v. Loud Hawk, 474 U.S. 302, 310-312 (1986); State v. Baker, 614 S.W.2d 352, 353 (Tenn. 1981). However, the right does not apply during time periods when charges have been dismissed. State v. Vickers, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997) (citing United States v. MacDonald, 456 U.S. 1, 8-9 (1982)). If the defendant's right to a speedy trial was violated, the only remedy is to dismiss the charges against him. Barker v. Wingo, 407 U.S. 514, 522 (1972); State v. Bishop, 493 S.W.2d 81, 83 (Tenn. 1973).

In Barker v. Wingo, the United States Supreme Court established four factors to be considered when determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. Barker, 407 U.S. at 530. Additionally, the Tennessee Supreme Court has stated that the strength of the State's case as to guilt can be used to help judge the four Barker factors. Bishop, 493 S.W.2d at 85.

A delay approaching one year will trigger a speedy trial analysis, and the presumption that delay has prejudiced the defendant intensifies over time. Doggett v. United States, 505 U.S. 647, 652 (1992); State v. Utley, 956 S.W.2d 489, 494 (Tenn. 1997). However, courts take into account the complexity of the case in evaluating the reasonableness of the length of delay. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996); State v. Easterly, 77 S.W.3d 226, 235 (Tenn. Crim. App. 2001). The delay "that can be tolerated for 'an ordinary street crime' is generally much less than for a serious, complex felony charge." Easterly, 77 S.W.3d at 235 (quoting Barker, 407 U.S. at 530-31). Further, the reason for the delay may justify it, and different reasons are assigned different weight in the balancing analysis. Barker, 407 U.S. at 531. Possible reasons for the delay are said to fall within four identifiable categories: (1) intentional delay to gain a tactical advantage over the defense or to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. Wood, 924 S.W.2d at 346-47. The State's deliberate attempt to delay trial to hamper the defense must be weighed

heavily against the State. Barker, 407 U.S. at 531. However, "a valid reason, such as a missing witness, should serve to justify appropriate delay." Id. Finally, Barker listed three areas in which a defendant could suffer prejudice due to a delay: (1) oppressive pre-trial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the defense. Id. at 532. Of the three, impairment of the defense is the most serious way in which a defendant can be prejudiced. Id.

### 1. Length of the Delay

On May 14, 2013, the Defendant was arrested for offenses arising out of the execution of the search warrant. Following his indictment in case number 7824, the charges were pending against the Defendant for ten months and twenty days until the State entered a nolle prosequi on April 3, 2014.[7] On July 7, 2014, the Defendant was re-indicted in case number 8083 for the same offenses (Counts 6-9) and for offenses arising out of drug buys occurring May 8, 9, 10, and 14 (Counts 1-5). These charges were pending for nine months and six days until the Defendant's trial on Counts 4, 6, 7, 8, and 9 on April 13, 2015. Thus, from the time the Defendant was initially charged with the offenses for which he was convicted (Counts 6-9) until his trial was over nineteen months. This delay is sufficient to trigger the Barker analysis. However, we do not consider the delay egregious when considering the reasons for the delay, as discussed below, and the seriousness of the Defendant's charges. The Defendant was charged with five Class B felonies, two Class C felonies, and two Class D felonies.

### 2. Reason for the Delay

Only a portion of the nineteen-month delay can be attributed to the State. There is no question that the State caused the initial delay when it voluntarily dismissed without prejudice indictment number 7824 on April 3, 2014. At a hearing held March 11, 2014, the State announced that it was not intending to introduce evidence relating to the May 14 controlled drug buy between the confidential informant and the Defendant. Although by the time of trial the State decided it needed to introduce this evidence, the State was willing to forgo charging the Defendant with other serious felonies—the offenses later charged as Counts 1-5—in order to proceed to trial on April 3, 2014. Thus, it appears that the delay was necessitated by the State's negligence and/or lack of foresight in its preparation of the case against the Defendant and was not an intentional delay in order to gain a tactical advantage over the defense or to harass the Defendant.

---

[7] As noted previously, the right to a speedy trial does not apply during time periods when charges have been dismissed. Vickers, 985 S.W.2d at 5 (citing MacDonald, 456 U.S. at 8-9).

Following the subsequent indictment in case number 8083, the trial court set the Defendant's case for trial on November 25, 2014. However, the Defendant then filed a motion to continue the trial to the next term on advice of defense counsel's doctor, which the trial court granted. Thereafter, the trial court was forced to declare a mistrial on March 25, 2015, after defense counsel was unable to continue with trial due to illness. While these are both valid reasons for the additional delay of almost five months, they cannot be attributed to the State. Accordingly, we conclude that the reason for the delay factor weighs only marginally against the State as the Defendant caused or acquiesced in some of the delay.

### 3. The Defendant's Assertion of the Right

It is unclear from the record when the Defendant asserted his right to a speedy trial. In his brief, the Defendant contends that he asserted his right to a speedy trial "when he originally pled not guilty to indictment [number] 7824 and asked for a trial." However, the Defendant's brief provides no citation to the record, and our review of the record reveals no such demand for a speedy trial. The Defendant also asserts that he made a demand for a speedy trial on April 3, 2014, when faced with the State's request that he agree to the admission of evidence of additional crimes. However, a review of the record shows that, while the Defendant argued there was "prejudice that attaches to nine months in [jail], away from his family, and in conditions that nobody would want to live in . . . ," the Defendant did not explicitly assert his right to a speedy trial.

Following the State's dismissal of the charges without prejudice, the Defendant was re-indicted in July 2014, and the case was set for trial in November 2014. Thereafter, the Defendant both moved for a continuance of his trial and filed a motion to dismiss the indictment.[8] The trial court granted the Defendant's motion for a continuance in an order filed October 10, 2014, and reset the Defendant's case for the next term. At a subsequent hearing on the motion to dismiss, the Defendant, for the first time, explicitly argued a speedy trial violation. In its order denying the motion to dismiss, the trial court noted that the Defendant was "now asserting a right to a speedy trial after moving to continue the trial to the next term." Thus, it appears that the Defendant's assertion of the right occurred only after his request that the trial court continue his trial. Even if we were to assume that the Defendant's argument at the April 3, 2014 trial constituted an assertion of his right to a speedy trial, the failure on the part of the Defendant to make any assertion of the right during the almost eleven-month period after his arrest weighs in the State's favor as it appears that the Defendant's eagerness for a speedy trial was instigated

---

[8] Neither the Defendant's motion for continuance nor the Defendant's motion to dismiss appears in the record on appeal.

only by the State's desire to pursue additional charges. Under these circumstances, we cannot give the Defendant's assertion of his speedy trial right strong evidentiary weight.

### 4. Prejudice to the Defendant

Regarding the fourth factor of the prejudice to the Defendant, the Defendant contends that his life was "utterly disrupted" and his ability to gather evidence and prepare a defense was hindered by his pre-trial incarceration of approximately sixteen months. The fact that the Defendant was incarcerated throughout much of the proceedings in this case is of considerable concern. We note, however, that a significant portion of his incarceration was due to the revocation of his prior probationary sentences, along with the Defendant's request that his bond on the instant charges be increased.[9] That the Defendant was on probation for prior felony offenses and subject to the revocation of probation at the time of his arrest for the instant charges weighs in favor of the State. Although the Defendant asserts that "witnesses were unable to recall details of an event that occurred more than a year ago," the record suggests no actual impairment to any defenses by virtue of the delay; there is no evidence that witnesses were lost, memories faded, or trial preparation was hampered. The Defendant insists that he was prejudiced because the delay caused the statute of limitations to run on the lesser-included offenses of simple possession and casual exchange, making those charges unavailable for the jury's consideration. As we set forth in Issue IX of this opinion, the Defendant could have removed any prejudice by agreeing to waive the statute of limitations, which he declined to do. Thus, the fact that no serious prejudice was caused by the delay other than the pre-trial incarceration of the Defendant tilts the balance in the State's favor.

In weighing the Barker factors, we hold that the factors, on balance, favor the State in this case. The lack of significant delay when considering the seriousness of the charges, the portion of the delay attributable to the Defendant, the Defendant's late assertions of his right to a speedy trial, and the lack of prejudice outweigh the State's role in causing delay based on its inattention to the evidence it needed to prosecute the case. The Defendant is not entitled to relief on this ground.

---

[9] The record reveals that the Defendant made a $10,000 bond on the charges following his arrest on May 14, 2013. Sometime thereafter, the Defendant was arrested on a violation of probation warrant in case number 6121 and 6236, and his probation was revoked on September 12, 2013. A preliminary hearing was held in general sessions court on September 24, 2013, at the conclusion of which the Defendant requested that the general sessions court increase his bond so that he could earn jail credits. The general sessions court granted the Defendant's request and set his bond at $50,000. The general sessions court also noted at that hearing that the Defendant had a "hold on him" through the juvenile court or chancery court for contempt for nonpayment of child support.

## B. Pre-Indictment Delay

The Defendant also asserts that the trial court should have granted his motion to dismiss based on a violation of his due process rights. The Defendant argues that the State purposefully delayed charging him with the offenses in indictment number 8083 in order to "try and force the Defendant to proceed to trial [in case number 7824] where he had not been provided the necessary discovery or time to prepare defense." The Defendant contends that the delay allowed the State to "use the uncharged conduct as leverage to try and force the Defendant to proceed unprepared[.]" He asserts that the State's delay caused "substantial prejudice" because the trial court refused to instruct the jury on the lesser-included offenses of simple possession and casual exchange based upon the applicable statute of limitations. The State responds that the Defendant was not denied due process.

A defendant is entitled to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 8 and 9 of the Tennessee Constitution. U.S. Const. amend. V, XIV; Tenn. Const. Art. I § 8-9. When a defendant believes that the delay prior to the initiation of proceedings has compromised his right to defend himself and right to a fair trial, he may assert that the delay violates his right to due process. Utley, 956 S.W.2d at 495; State v. Gray, 917 S.W.2d 668, 671 (Tenn. 1996). Generally, to show a due process violation, the defendant must establish (1) that there was a delay; (2) that the defendant sustained actual prejudice as a direct and proximate result of the delay; and (3) that the State caused the delay in order to gain a tactical advantage or to harass the accused. Utley, 956 S.W.2d at 495. A due process violation, unlike a speedy trial violation, must demonstrate actual prejudice in relation to the due process claim. Id. "[P]otential forms of prejudice[] cannot be presumed and instead must be substantiated by the defendant . . . ." Id.

Here, the Defendant was indicted in case number 8083 on July 7, 2014, for offenses relating to the execution of the May 14, 2013 search warrant and for offenses relating to controlled drug buys conducted May 8, 9, 10, and 14, 2013. Accordingly, the time lapse between the crimes and the Defendant's indictment was thirteen months. Assuming that a thirteen-month delay is sufficient to trigger a due process inquiry, the Defendant cannot satisfy the other two factors required for relief. First, although a hearing was conducted on the Defendant's motion to dismiss, the Defendant presented no evidence to show how he was prejudiced by the delay. In his brief on appeal, the Defendant claims that he was prejudiced by the running of the statute of limitations on the lesser-included offenses of simple possession and casual exchange. However, as explained in Issue IX of the opinion, the Defendant had the opportunity to waive the statute of limitations but did not do so. Second, the Defendant does not provide any proof that the State "caused the delay in order to gain a tactical advantage or to harass the

[Defendant]." See Gray, 917 S.W.2d at 671. The discussion at the April 3, 2014 trial indicates that the State had reassessed its evidence following the pre-trial motions hearing and decided that it needed to introduce proof of the prior controlled drug buys for the most effective prosecution of its case. The State attempted to persuade the trial court with extensive legal research on the propriety of admitting the evidence. When that failed, the State offered the Defendant a bargain to avoid delay. Only when those efforts failed did the State dismiss the case and re-indict a few months later. There was no improper purpose in the delay and no proof of actual prejudice. Therefore, the Defendant is not entitled to relief on Fifth and Fourteenth Amendment due process grounds.

## C. Rule 48(b)

The Defendant further contends that the trial court abused its discretion by failing to dismiss the indictment pursuant to Rule 48(b) of the Tennessee Rules of Criminal Procedure. He asserts that the delay was unnecessary delay and was used by the State "to gain [a] tactical advantage." He maintains that he was prejudiced by the delay because of "witness memory loss" and his inability to post bond and assist in the preparation of his defense. The State replies that the case should not have been dismissed under Rule 48(b).

Tennessee Rule of Criminal Procedure 48(b) allows a trial court to dismiss an indictment, presentment, information, or complaint if "unnecessary delay" occurs in: "presenting to a grand jury a charge against a defendant who has been held to answer to the trial court; or . . . bringing a defendant to trial." Tenn. R. Crim. P. 48(b)(1)-(2). Dismissal under this rule is not for a constitutional violation but relates to the trial court's inherent authority over its "own jurisdiction and docket." State v. Benn, 713 S.W.2d 308, 310 (Tenn. 1986). In Benn, our supreme court articulated the analysis required before a trial court may dismiss an indictment under Rule 48(b) when the delay falls short of a constitutional violation, as follows:

> The factors to be considered in passing on a motion to dismiss under Rule 48(b) where there has been no constitutional violation are the length of the delay, the reasons for the delay, the prejudice to defendant, and waiver by the defendant. Of course, these are the same factors that determine a speedy trial constitutional violation, except for the factor of a defendant's assertion of his right to a speedy trial. When it is found to be appropriate to dismiss with prejudice, the trial judge must make express findings of fact on each of the relevant factors listed herein.

Id. at 311. The decision whether to dismiss an indictment lies within the discretion of the trial court. State v. Harris, 33 S.W.3d 767, 769 (Tenn. 2000).

For the reasons discussed in our analysis of the Defendant's speedy trial and due process claims, we conclude that the trial court did not abuse its discretion in denying the motion to dismiss under Rule 48(b). See State v. Gai D. Kuot, No. M2012-01884-CCA-R3-CD, 2013 WL 4539020, at *12-13 (Tenn. Crim. App. Aug. 26, 2013), perm. app. denied (Tenn. Dec. 11, 2013). The length of the delay, while not minimal, was hardly extreme, and it was attributable to both the State and the Defendant. Moreover, the State's delay was not an intentional delay in order to gain a tactical advantage over the defense or to harass the Defendant, and there was no showing of prejudice to the Defendant. The Defendant is not entitled to relief on this ground.

## D. Prosecutorial Vindictiveness

The Defendant also contends that the trial court should have granted his motion to dismiss indictment number 8083 based on his claim of prosecutorial vindictiveness. The Defendant contends that he was subject to prosecutorial vindictiveness "because the prosecutor explicitly stated he would punish the defendant for exercising his legal rights" after the Defendant successfully persuaded the trial court to exclude "prejudicial and irrelevant uncharged conduct under 404(b)." The Defendant argues that the inadmissible uncharged conduct was "crucial" to the State's case and that the Defendant's exercising of his right to exclude the evidence caused the State "to do over again what it thought it had already done correctly once." He asserts that the prosecutor's comments created a "presumption of vindictiveness" and that the State did not establish a legitimate purpose other than retaliation against the Defendant for exercising his legal rights. The State responds that the Defendant's due process rights were not violated by prosecutorial vindictiveness.

It is a violation of basic due process to punish a person for choosing to exercise his or her constitutional rights. North Carolina v. Pearce, 395 U.S. 711, 724-25 (1969). The Tennessee Supreme Court has held that, even in the absence of proof of actual bad faith or malice, there is a rebuttable presumption of prosecutorial vindictiveness that may arise if the circumstances pose a "realistic likelihood" of prosecutorial retaliation. State v. Phipps, 959 S.W.2d 538, 546 (Tenn. 1997). Our supreme court established the following criteria for assessing whether a "realistic likelihood" of prosecutorial retaliation exists:

(1) Whether the right asserted by the defendant would result in duplicable expenditures of prosecutorial resources;

(2) whether the prosecution would be required to do over again what it thought it had already done correctly once;

(3) whether the prosecutor has a personal stake or an interest in self vindication;

(4) whether institutional biases militated against retrial of a decided question; and

(5) whether the prosecutorial decision to increase the charge or sentence was made after the initial trial was completed rather than in a pre-trial context.

Id. If the circumstances in a particular case "give rise to a realistic likelihood of prosecutorial retaliation[,]" the State must establish, by clear and convincing evidence, that a legitimate purpose motivated the challenged decision. Id.

If proven, allegations of prosecutorial vindictiveness or selective prosecution in the institution of a prosecution may warrant dismissal of the indictment based on constitutional concerns. State v. Skidmore, 15 S.W.3d 502, 508 (Tenn. Crim. App. 1999) (citing Blackledge v. Perry, 417 U.S. 21, 27 (1974)). However, if a prosecutor has probable cause to believe the accused committed the underlying offense, the decision to prosecute the accused rests entirely within the prosecutor's discretion, subject to certain constitutional limitations. Id. (citing State v. Superior Oil, Inc., 875 S.W.2d 658, 660 (Tenn. 1994); Quillen v. Crockett, 928 S.W.2d 47, 51 (Tenn. Crim. App. 1995)). We review the trial court's denial of a motion to dismiss an indictment on grounds of prosecutorial vindictiveness for abuse of discretion. See United States v. Suarez, 263 F.3d 468, 476 (6th Cir. 2001).

In Phipps, the Tennessee Supreme Court considered the prosecutor's actions after conviction and upon retrial, when the State sought to have a greater sentence imposed on the defendant. Phipps, 959 S.W.2d at 539-40. The Defendant correctly notes in his brief that the Tennessee Supreme Court has not yet addressed the issue of prosecutorial vindictiveness in the pre-trial context. The United States Supreme Court first addressed an allegation of prosecutorial vindictiveness in a pre-trial setting in Bordenkircher v. Hayes, 434 U.S. 357 (1978). In that case, the Supreme Court held that the presumption of vindictiveness does not arise when a prosecutor follows through on a threat, made during plea negotiations, to bring additional charges against a defendant who declines to plead guilty to the offense with which he was originally charged. Id. at 363. The Supreme Court explained that, in our judicial system,

so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury,

generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

Id. at 364 (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)). The Supreme Court distinguished the case from Pearce and other prosecutorial vindictiveness cases, noting that those cases involved "the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.'" Bordenkircher, 434 U.S. at 362 (quoting Parker v. North Carolina, 397 U.S. 790, 809 (1970) (Brennan, J., dissenting and concurring in the result). Accordingly, courts have been extremely cautious in applying the presumption of vindictiveness in the pre-trial context. United States v. Perry, 335 F.3d 316, 324 (4th Cir. 2003).

In United States v. Goodwin, 457 U.S. 368 (1982), the United States Supreme Court considered whether a prosecutor's addition of a felony charge following a defendant's pre-trial demand for a jury trial on a misdemeanor charge gives rise to the presumption of vindictiveness. The Supreme Court drew a distinction between pre-trial and post-trial initiation of additional charges, holding that in a pre-trial setting a defendant must offer proof of prosecutorial vindictiveness and that the mere presence of a superseding indictment bringing additional charges is not sufficient to be presumptively unreasonable. Id. at 381-82, 384. The Supreme Court stated:

There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pre[-]trial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pre[-]trial decision.

<u>Id.</u> at 381. The Supreme Court recognized that the original indictment, which often begins plea negotiations,

> does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

<u>Id.</u> at 380. In reaching the conclusion that there was no presumption of vindictiveness, the Supreme Court reasoned that it was highly unlikely "that a prosecutor would respond to a defendant's pre-trial demand for a jury trial by bringing charges not in the public interest" and found that no duplicative expenditures were incurred as a result of the defendant's request. <u>Id.</u> at 383-84. Moreover, no judge was asked to do again what he thought he had already done correctly once, as in <u>Pearce</u>. <u>Id.</u> at 383. Finally, the Supreme Court determined that the timing of the prosecutor's decision weighed against a finding of the presumption of vindictiveness because, in the pre-trial context, the assessment of the proper extent of prosecution has not yet been resolved. <u>Id.</u> at 384.

Applying these principles to the facts of this case, we conclude that the circumstances of the case do not "pose a 'realistic likelihood' of prosecutorial retaliation" and, thus, a presumption of prosecutorial vindictiveness is not warranted. Accordingly, for us to find prosecutorial vindictiveness in this pre-trial context, the Defendant must prove actual vindictiveness. <u>Goodwin</u>, 457 U.S. at 384. The Defendant has not met this burden. When the State re-indicted the Defendant, it did not increase the Defendant's charges for the same conduct. Rather, indictment number 8083 added charges for separate offenses committed by the Defendant. The State had probable cause to initiate the prosecution for the additional charges, and it did so only after giving the Defendant the option to forgo being charged with the additional offenses in exchange for his agreeing to the admission of Rule 404(b) evidence at the trial of indictment 7824. While prosecutorial resources presumably were duplicated when the State had to re-present to the grand jury the original charges from indictment number 7824, the Defendant's decision not to agree to the admission of Rule 404(b) evidence did not require the State to do over what it thought it had done correctly once. <u>Phipps</u>, 959 S.W.2d at 542. The State initially announced, on March 11, 2014, that it would not seek to admit Rule 404(b) evidence at the April 3, 2014 trial. By the time of trial, however, the State realized that its announcement was ill-advised and asked the trial court to reconsider the issue. The State's actions that day "no more than openly presented the [D]efendant with the unpleasant alternatives" of agreeing to the admission of Rule 404(b) evidence or "facing charges on which he was plainly subject to prosecution [and] did not violate the Due

Process Clause of the Fourteenth Amendment." Bordenkircher, 434 U.S. at 365. The Defendant's arguments to the contrary are without merit.

## II. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to support his conviction for possession of 0.5 grams or more of cocaine with intent to deliver. He argues that the State failed to establish that the crack cocaine found inside his residence was possessed with the intent to deliver because authorities did not find a significant amount of cash or individually packaged drugs inside the home and because the amount of crack cocaine found "could have supported a finding of personal use." The State replies that the evidence is sufficient to sustain the Defendant's conviction.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

It is an offense to knowingly possess a controlled substance with intent to manufacture, deliver, or sell. Tenn. Code Ann. § 39-17-417(a)(4). A violation of this section with respect to 0.5 grams or more of cocaine, a Schedule II controlled substance, Tenn. Code Ann. § 39-17-408(b)(4), is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1). A conviction for this offense may be had upon either actual or constructive possession. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession is the ability to reduce an object to actual possession. State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991) (quoting State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). With regard to a determination of intent to sell or deliver, proof of intent

usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. See Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983) (observing that a jury may derive a defendant's intent from both direct and circumstantial evidence). It is permissible for the jury to infer from the amount of a controlled substance or substances possessed by the defendant, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or delivering. Tenn. Code Ann. § 39-17-419.

In the present case, the evidence showed that on May 14, 2013, Investigator Chunn gave the CI $70 in pre-recorded buy money, which the CI used to purchase 0.25 grams of crack cocaine from the Defendant. That afternoon, officers returned to the Defendant's residence to execute a search warrant. They discovered 4.79 grams of crack cocaine on a dresser near the Defendant's bed, digital scales beside the cocaine, and the $70 in buy money that Investigator Chunn had given to the CI under a pillow on the Defendant's bed where the Defendant had been sleeping. Additionally, officers recovered plastic baggies, two handguns in a nightstand, and $300 in cash in small denominations, which Investigators Chunn and Green testified was indicative of an intent to deliver. When viewed in the light most favorable to the State, the evidence overwhelmingly supports the Defendant's conviction for possession of 0.5 grams or more of cocaine with intent to deliver.

### III. Identity of the Confidential Informant

The Defendant contends that the trial court erred by failing to compel the State to disclose information to the defense about the confidential informant. The Defendant asserts that the State was required to reveal the CI's identity because the CI was a participant in the crime, witnessed the crime, and possessed knowledge favorable to the Defendant. The State responds that the Defendant is not entitled to relief based on the trial court's failure to compel evidence regarding the CI because, by the time of the trial that produced the convictions giving rise to this appeal, the Defendant had detailed knowledge about the CI, including a preview of how he would testify.

The State is generally not required to disclose the identity of a confidential informant except when the informant (1) participated in the crime, (2) witnessed the crime, or (3) "has knowledge which is favorable to the defendant." State v. Ostein, 293 S.W.3d 519, 526 (Tenn. 2009) (citing State v. Vanderford, 980 S.W.2d 390, 397 (Tenn. Crim. App. 1997)). The defendant must show by a preponderance of the evidence the circumstances that entitle him to the confidential informant's identity. Ostein, 293 S.W.3d at 528; Vanderford, 980 S.W.2d at 397. The State is not required to divulge the identity of the informant if the defendant fails to establish the materiality of the

confidential informant to his defense. Vanderford, 980 S.W.2d at 397. A trial court's decision about whether to order the disclosure of a confidential informant's identity is reviewed by this court for an abuse of discretion. Ostein, 293 S.W.3d at 526 (citing House v. State, 44 S.W.3d 508, 512 (Tenn. 2001); United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir. 1985); Vanderford, 980 S.W.2d at 396-97).

At a pretrial motions hearing in case number 7824, the trial court denied the Defendant's motion to reveal the identity of the confidential informant based on the State's announcement that it would not seek to introduce evidence at trial of the May 14 controlled drug buy with the informant. When the State asked the trial court to reconsider the issue on the morning of the April 3, 2014 trial, the State revealed to the Defendant the CI's identity as the confidential informant and offered the Defendant additional discovery on each of the controlled drug buys. Following the State's dismissal of indictment number 7824, the Defendant was re-indicted in case number 8083. The Defendant then filed a motion to compel additional discovery, asserting that the discovery provided by the State provided "no information" regarding the confidential informant's name, address, and criminal history.

At a hearing on the morning of the March 23, 2015 trial, the State indicated that the CI had received no benefit from the State, by payment or plea deals, in exchange for his testimony. The State also provided the Defendant with information regarding the CI's criminal history. Regarding the Defendant's motion to compel, the trial court then stated:

> Well, it hasn't been an issue until this morning. And I know that the State announced in open court the identity of the informant. I don't know that it's incumbent upon the State to run the defense lawyer down and give them all that information. I think it's incumbent on the defense lawyer to contact the State that they want additional information other than the identity of the person. If they want other things, [defense counsel should] contact the State to try to get it. The State has not withheld stuff.

Thereafter, in her opening statement, defense counsel referred to the CI's "lengthy criminal history of stealing from people, of breaking into people's homes"; the Defendant's history of friendship with the CI; and the CI's history of drug usage. As noted by the State, the CI's direct examination occurred on the first day of the May 23 trial, giving the Defendant a full preview of the CI's testimony. Thus, by the April 13, 2015 trial which produced the convictions giving rise to this appeal, the Defendant had detailed knowledge about the CI's identity, his criminal history, and a preview of how he would testify. Under these circumstances, the Defendant has failed to establish that the trial court abused its discretion in any manner.

- 34 -

IV. Cross-Examination of the Confidential Informant

Next, the Defendant asserts that the trial court erred in curtailing his cross-examination of the CI. The Defendant maintains that he was unable to ask the CI about the "details of his prior convictions" and was prevented from asking about any potential leniency the CI would receive from the State in exchange for his testimony. The Defendant argues that because the CI's testimony was crucial to the State's case and his "credibility was paramount" the trial court's error cannot be deemed harmless beyond a reasonable doubt. The State responds that the trial court properly curtailed the Defendant's cross-examination of the CI.

The Defendant couches his argument in terms of his right to confront witnesses against him. A defendant's constitutional right to confront the witnesses includes the right to conduct meaningful cross-examination. Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987); State v. Brown, 29 S.W.3d 427, 430-31 (Tenn. 2000). The denial of a defendant's right to effective cross-examination is "'constitutional error of the first magnitude'" and may violate the defendant's right to a fair trial. State v. Hill, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)). "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (citing Coffee v. State, 216 S.W.2d 702, 703 (Tenn. 1948); Davis v. State, 212 S.W.2d 374, 375 (Tenn. 1948)). A defendant's right to confront witnesses does not preclude a trial court from imposing limits upon the cross-examination of witnesses, taking into account such factors as "harassment, prejudice, issue confrontation, witness safety, or merely repetitive or marginally relevant interrogation." State v. Reid, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994); see also Tenn. R. Evid. 611(a) (stating that the trial court has authority to "exercise appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid abuse by counsel[]"). A defendant's right to confront and cross-examine witnesses also "does not mean that a defendant has a right to present irrelevant evidence." State v. Sheline, 955 S.W.2d 42, 47 (Tenn. 1997). Absent a clear abuse of discretion that results in manifest prejudice to the defendant, this court will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses. State v. Johnson, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984) (citing Monts v. State, 379 S.W.2d 34 (Tenn. 1964)).

In this case, the trial court sustained the State's objections when defense counsel asked the CI about: (1) the victim of one of the CI's prior theft convictions; (2) "what [was] supposed to happen" on the CI's next court date; and (3) the case that the CI was "currently incarcerated on." Following each of these occasions, defense counsel made no offer of proof as to what the CI's answers would have been and made no argument as to

how such information was relevant. However, it is clear from the record that the date and nature of each of the CI's prior convictions were discussed during his testimony, and the jury was able to consider the CI's criminal history in weighing his credibility. As for promises of leniency in exchange for his testimony, the CI stated that the State had not promised him anything in exchange for his testimony. When asked if he was hoping to get out of jail, the CI stated, "I don't think I will." Thus, the Defendant was able to cross-examine the CI on promises of leniency, and there no proof that further cross-examination would have resulted in different answers from the CI. The trial court did not clearly abuse its discretion by limiting the cross-examination of the CI. This issue is without merit.

## V. Motion for Mistrial

The Defendant maintains that the trial court erred in denying his motion for a mistrial. He contends that the CI made "repeated comments" alluding to prior drug transactions with the Defendant, which tainted the jury and created a need for a mistrial. The State replies that the trial court properly denied a mistrial.

The decision of whether to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Normally, a mistrial should be declared only in the event that a manifest necessity requires such action. State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." State v. Land, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. Id. This court will not disturb the trial court's decision unless there is an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990). In evaluating whether the trial court abused its discretion, we may consider: "(1) whether the State elicited the testimony, (2) whether the trial court gave a curative instruction, and (3) the relative strength or weakness of the State's proof." State v. Welcome, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007).

In this case, the Defendant objected to two statements made by the CI during the State's direct examination of the witness. The Defendant first objected following this exchange:

Q. Okay. And do you recall how much money you were given?

A. I believe that was the last time. That would have been like [$]70, maybe $75.

Following this first objection, the prosecutor suggested a curative instruction, but the Defendant asked that the CI be admonished on the record during a jury-out hearing, to which the trial court agreed.

The Defendant's second objection was raised following this exchange between the prosecutor and the CI:

Q.  When had you handed [the Defendant] the money for the purchase of that?

A. When you first seen [sic] the truck in the beginning of the video, I walked around to the driver's side to meet him.  And I recall this day.  I was—before each encounter on this—on this day—

Q. We're talking about this day.

A. Yeah, on this day, yeah.  Before and after I was searched by the sheriff's office thoroughly.  The vehicle I was driving was searched thoroughly.  Usually when I would get back on this occasion I would be almost strip searched.

At that time, the Defendant requested a jury-out hearing and moved for a mistrial, which the trial court denied.  There was no discussion of or request for a curative instruction during the jury-out hearing, and no curative instruction was given.

Regarding the first Welcome factor, the prosecutor's questions did not elicit the offending testimony.  The prosecutor did not ask the CI about other drug buys; rather, he attempted to prevent the CI from testifying about past events.  During the jury-out hearing following the Defendant's first objection, the prosecutor admonished the CI not to refer to any drug buys other than the buy on May 14 and reminded the CI during his testimony to focus only on the day at issue.  This factor weighs in the State's favor.  Regarding the second factor, the trial court did not provide a curative instruction.  We note, however, that the Defendant did not request a curative instruction and instead requested that the witness be admonished during a jury-out hearing.  The Defendant's hesitancy to request a curative instruction is understandable as such an instruction would likely have only underscored the offending testimony, which the jury likely overlooked due to its brevity and ambiguity.  Under these circumstances, we consider this factor to be neutral.  Finally, we agree with the State that the case against the Defendant was strong and that the jury would have convicted the Defendant even in the absence of the allegedly improper testimony.  Given that the complained of testimony was ambiguous when viewed in context, it is unlikely that the jury was swayed by the offending

- 37 -

comments. Accordingly, the trial court did not abuse its discretion by denying the Defendant's motion for mistrial.

## VI. Hearsay

Under the Tennessee Rules of Evidence, "hearsay" is any statement, other than one made by the declarant while testifying at trial or in a hearing, offered into evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801. Hearsay statements are not admissible unless they fall within one of the evidentiary exceptions or some other law renders them admissible. Tenn. R. Evid. 802.

Our supreme court has recently addressed the standard of review applicable to the review of hearsay statements:

> The standard of review for rulings on hearsay evidence has multiple layers. Initially, the trial court must determine whether the statement is hearsay. If the statement is hearsay, then the trial court must then determine whether the hearsay statement fits within one of the exceptions. To answer these questions, the trial court may need to receive evidence and hear testimony. When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. State v. Gilley, 297 S.W.2d [739], 759-61 [(Tenn. Crim. App. 2008)]. Once the trial court has made its factual findings, the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule—are questions of law subject to de novo review. State v. Schiefelbein, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); Keisling v. Keisling, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005).

Kendrick v. State, 454 S.W.3d 450, 479 (Tenn. 2015).

### A. Tow-In Report

The Defendant contends that the tow-in report for the Chevy Tahoe was a police report and therefore not admissible under the public records hearsay exception. The State replies that the report was not a police report and was not introduced for the truth of the matter asserted, *i.e.*, "that the vehicle was towed." Rather, it was introduced to establish that the Defendant used the vehicle, that the Defendant's mail was inside the vehicle, and that the Defendant's wife was the registered owner of the vehicle.

- 38 -

Police reports are hearsay and are not admissible as evidence. See Tenn. R. Evid. 803(8). The primary problem with the admissibility of police reports is that the report is hearsay made up of opinion or conclusion not based on personal knowledge. McBee v. Williams, 405 S.W.2d 668, 671 (Tenn. Ct. App. 1966).

> Police reports based upon statements of witnesses are hearsay and are not admissible in evidence. The reasoning behind this rule is that if the officer is present he can testify as to his first hand knowledge. He cannot testify as to what was told to him and such matters could not be admitted with the report in any event. If the report is admitted, it may not contain material to which the author, had he been present, would be incompetent to testify.

McDonald v. Onoh,772 S.W.2d 913, 914 (Tenn. Ct. App. 1989) (quoting Burch, Trial Handbook for Tennessee Lawyers § 322 (1980)).

Upon review, we conclude that the tow-in report is a police report, which is specifically excluded from the public records exception to the hearsay rule. See Tenn. R. Evid. 803(8). The document, which was filled out by Investigator Chunn on May 14, 2013, contains the heading "Tipton County Sheriff's Office Vehicle Tow-In Report." The document lists the make, model, "vin" number, and license plate number of the Chevy Tahoe. Additionally, the document lists the Defendant as "the driver" and states that Ms. Pearson is the registered owner of the vehicle. Finally, the tow-in report describes the personal items found inside the vehicle, including "mail with [the Defendant's] name[.]" Moreover, the State introduced the document for the truth of the matters asserted within—that the vehicle was driven by the Defendant, owned by the Defendant's wife, and contained the Defendant's possessions—because the State needed to connect the Defendant to the vehicle appearing in the still-shot taken from the videotape of the undercover drug buy. We note, however, that this evidence connected the Defendant to the offense charged in Count 4 of the indictment—the delivery of drugs during the undercover buy on May 14—and the Defendant was not convicted of this charge. Moreover, the evidence connecting the Defendant to the items found inside the residence, which formed the basis for his convictions in Count 6-9, was overwhelming. We, therefore, hold that any error in the admission of the tow-in report was harmless. See Tenn. R. Evid. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). The Defendant is not entitled to relief on this ground.

## B. Audio Contents of Videotape

The Defendant also contends that the trial court erred by admitting testimony from Investigator Green and the CI about the audio contents of the videotaped drug

transaction. He asserts that the testimony was hearsay, and no hearsay exception allowed for the introduction of the evidence.

Upon review, we discern no error in the trial court's admission of this testimony. As for Investigator Green's testimony, the investigator related incriminating statements made by the Defendant on the videotape, in which the Defendant referred to an amount of some unspecified substance. The Defendant's statements qualify as an admission by a party opponent, which are not excluded by the hearsay rule. Tenn. R. Evid. 803(1.2) ("[a] statement offered against a party that is . . . the party's own statement in either an individual or representative capacity" is "not excluded by the hearsay rule"). Investigator Green's testimony about the CI's portion of the conversation with the Defendant provided context for the Defendant's admissible statements and were not offered for their truth. See e.g., State v. George Anthony Bell, No. M2008-01187-CCA-R3-CD, 2009 WL 3925370, at *6 (Tenn. Crim. App. Nov. 19, 2009), perm. app. denied (Tenn. Apr. 16, 2010) (concluding that "statements made during recorded conversations between an informant and a non-law enforcement party generally are admissible because they are not offered for the truth of the matter they assert"); see also Neil P. Cohen et al., Tennessee Law of Evidence, § 8.01[10], 8-25 (5th ed. 2005) ("Statements designed to (1) provide a context for, or (2) permit an understanding of, another statement may not be hearsay."). Regarding the testimony from the CI, the CI stated that he called the Defendant and that the Defendant told the CI that he would "be there in a minute." Again, this qualifies as an admission of a party opponent, which is not excluded by the hearsay rule. Tenn. R. Evid. 803(1.2). Therefore, the trial court did not abuse its discretion in the admission of this testimony from Investigator Green and the CI. The Defendant is not entitled to relief.

## VII. Prosecutorial Misconduct

Next, the Defendant argues that the State committed prosecutorial misconduct, prejudicing his right to a fair trial. He maintains that the prosecutor: (1) violated discovery rules by failing to provide the Defendant with the identity of the confidential informant; (2) attempted to illicit testimony previously ruled inadmissible by the trial court; and (3) dismissed the indictment in case number 7824 "with the express intent to re-indict, solely because the [D]efendant did not acquiesce to the admission of evidence the [trial] court had previously ruled inadmissible." The State responds that there was no prosecutorial misconduct.

In order to prevail on a claim of prosecutorial misconduct, "[t]he general test to be applied is whether the improper conduct could have affected the verdict to the prejudice of the defendant." Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965); see also State v. Richardson, 995 S.W.2d 119, 127 (Tenn. Crim. App. 1998). In reviewing an

allegation of improper conduct, this court should consider several factors including the intent of the prosecutor, the curative measures which were undertaken by the trial court, the improper conduct viewed in context and in light of the facts and circumstances of the case, the cumulative effect of the remarks with any other errors in the record, and the relative strength or weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

### A. Violating Discovery Rules Regarding the Identity of the Confidential Informant

As discussed in Issue III of this opinion, the Defendant had actual knowledge of the CI's identity and criminal record before his April 13, 2015 trial, as well as a preview of how the CI would testify regarding the May 14 drug buy. Thus, the Defendant cannot show that the prosecutor's alleged violation of discovery rules regarding the identity of the CI could have affected the verdict to the prejudice of the Defendant. Harrington, 385 S.W.2d at 759.

### B. Attempting to Illicit Evidence Previously Ruled Inadmissible

During the Defendant's March 23, 2015 trial, the prosecutor asked Investigator Chunn if, in his experience, firearms were commonly exchanged as payment for drugs, to which Investigator Chunn responded, "Yes." The Defendant objected on relevance grounds, and the trial court sustained the objection. During the April 13, 2015 trial, the prosecutor asked Investigator Chunn whether guns were sometimes used as currency to buy drugs, and the Defendant objected on the grounds that the question was speculative. During a resulting bench conference, the trial court noted that it "rarely rule[d] the same way twice" but sustained the Defendant's objection.

Upon review, we do not believe that the State's question to Investigator Chunn was improper. The State's question was relevant during the first trial because the Defendant had asked Investigator Chunn on cross-examination about the lack of ammunition for the two handguns, and the investigator's response on re-direct that guns were sometimes traded for drugs provided an explanation as to why the Defendant might have handguns but no ammunition in his residence. Moreover, the prosecutor's question in the second trial did not call for speculation because the State had established Investigator Chunn's extensive experience as a narcotics investigator, and the prosecutor prefaced the question on the investigator's experience. The trial court seemed to conclude during the bench conference that the prosecutor was not out of bounds for attempting to explore the line of questioning a second time when it noted that it "rarely ruled the same way twice." The Defendant has not established that the prosecutor's conduct was improper or that the challenged conduct could have affected the verdict to

- 41 -

the prejudice of the Defendant. Harrington, 385 S.W.2d at 759. Accordingly, he is not entitled to relief on this ground.

*C. Dismissing Indictment in Case Number 7824*

We agree with the State that this claim "appears to be little more than a rehashing of the defendant's grievances in Issue I[.]" As we have determined, the prosecutor's action of dismissing the indictment in case number 7824 with the express intent to re-indict the Defendant "no more than openly presented the [D]efendant with the unpleasant alternatives" of agreeing to the admission of Rule 404(b) evidence or "facing charges on which he was plainly subject to prosecution[.]" See Bordenkircher, 434 U.S. at 365. Such conduct was not improper and did not violate due process. The Defendant is not entitled to relief.

## VIII. Chain of Custody

The Defendant contends that the trial court erred in admitting certain exhibits into evidence when the State failed to establish chain of custody. Specifically, he contends that the State failed to establish that the contents of the white envelope admitted as Exhibit 18 and the contents of the clear plastic bag admitted as Exhibit 20 came from the Defendant or the Defendant's residence and that no one had tampered with the items. The State responds that it properly established a chain of custody for Exhibits 18 and 20.

Tennessee Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). The Tennessee Supreme Court has previously recognized that it is "well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody." State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (internal quotes omitted). The purpose of the chain of custody requirement is "to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." Id. (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)). Even though each link in the chain of custody should be sufficiently established, Rule 901(a) does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor is the State be required to establish facts which exclude every possibility of tampering. State v. Cannon, 254 S.W.3d 287, 296 (Tenn. 2008) (citing Scott, 33 S.W.3d at 760). "[W]hen the facts and circumstances that surround tangible evidence reasonably establish the identity and integrity of the evidence, the trial court should admit the item into evidence." Id. In addition, the State's failure to call as a witness each person who handled an item does not necessarily preclude the admission of

the evidence.  Id.  "Absent sufficient proof of the chain of custody, however, the 'evidence should not be admitted . . . unless both identity and integrity can be demonstrated by other appropriate means.'"  Scott, 33 S.W.3d at 760 (quoting Neil P. Cohen, et al., Tennessee Law of Evidence § 901.12, at 624 (3d ed.1995)).

We review challenges to the chain of custody of evidence under the abuse of discretion standard.  Cannon, 254 S.W.3d at 295 (citing Scott, 33 S.W.3d at 752). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party."  State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

In this case, Investigator Chunn testified that, following the drug transaction with the Defendant on May 14, the CI turned over approximately 0.25 grams of crack cocaine, which Investigator Chunn placed into a sealed evidence envelope (Exhibit 18). Investigator Chunn stated that he turned over the envelope containing the crack cocaine to Deputy Turner, the evidence technician for the sheriff's office, on May 14, 2013. Deputy Turner testified that, on May 14, 2013, he received from Investigator Chunn a white rock substance, which was contained in a white property envelope.  Deputy Turner identified the property envelope and stated that he had filled out and dated the outside of the envelope.  He testified that he transported the item to the TBI crime lab in Memphis on May 17, 2013.  Agent Garrett testified that she received at the crime lab the white property envelope from Deputy Turner, and she identified the white envelope based on markings from the lab.  Agent Garrett analyzed the contents of the envelope, which she determined to be "cocaine base, also known as crack cocaine, in the weight of 0.25 grams."  Deputy Turner testified that he received the same evidence from the crime lab on July 31, 2013, after testing was complete.  Deputy Turner stated that he had returned the substance to the evidence room at the sheriff's office and agreed that it had been in the custody of the sheriff's office since that time.

Regarding Exhibit 20, Investigator Chunn testified that, during the execution of the search warrant, he found in the Defendant's bedroom a white substance wrapped in a clear cellophane bag, which field-tested positive for cocaine.  Investigator Chunn placed the evidence into a clear evidence envelope at the scene, and he identified the envelope at trial (Exhibit 20).  Investigator Chunn testified that he transported the sealed envelope back to the sheriff's office where he gave it to Deputy Turner to be logged as evidence. Deputy Turner testified that he received the evidence from Investigator Chunn on May 16, 2013, and transported the substance to the crime lab on May 17, 2013.  Agent Garrett identified the clear plastic evidence envelope based on her initials and the crime lab case number.  Agent Garrett stated that she analyzed the white rock-like substance contained inside the clear bag and found that it was 4.79 grams of cocaine base.  She testified that

she returned the item of evidence to Deputy Turner after the completion of testing. Deputy Turner stated that he received the evidence from the crime lab on July 31, 2013, and returned it to the evidence room at the sheriff's office. Deputy Turner agreed that the evidence had been in the custody of the sheriff's office since that time.

Thus, every link in the chain of custody for Exhibit 18—from the CI to Investigator Chunn to Deputy Turner to Agent Garrett at the crime lab and back to Deputy Turner for trial—was adequately established. Likewise, every link in the chain of custody for Exhibit 20—from the Defendant's bedroom to Investigator Chunn to Deputy Turner to Agent Garrett at the crime lab and back to Deputy Turner for trial—was adequately established. Because the State reasonably established the identity and integrity of the evidence, the trial court did not abuse its discretion in admitting these exhibits.

## IX. Lesser-Included Offenses

The Defendant next asserts that the trial court erred in failing to charge simple possession and casual exchange as lesser-included offenses to Count 8. He argues that the applicable statute of limitations did not bar the prosecution for these lesser-included offenses because the statute of limitations was tolled based on the State's express intent to re-indict the Defendant. The Defendant further asserts that his written request for the trial court to instruct the jury on simple possession and casual exchange constituted a constructive waiver of the statute of limitations. Finally, he asserts that, even if the statute of limitations had expired, the trial court should have instructed the jury on the lesser-included misdemeanor offenses and simply vacated the convictions if the jury returned a guilty verdict on the lesser-included offenses. The State responds that the Defendant was not entitled to jury instructions on simple possession and casual exchange and was not prejudiced by their absence and that any error was harmless beyond a reasonable doubt.

### A. Right to Trial by Jury

The United States Constitution and the Tennessee state constitution guarantee criminal defendants the right to trial by jury. U.S. Const. amend. VI; Tenn. Const. art. I, § 6 (providing "that the right of trial by jury shall remain inviolate"). This right includes an entitlement to a correct and complete charge of the law. State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006) (citing State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). Moreover, it is well-established that the right to a correct and complete charge of the law includes the right to jury instructions "on each and every lesser[-]included offense embraced within the charged offense(s) and supported by the proof [.]" State v. Davis,

266 S.W.3d 896, 902 (Tenn. 2008) (citing <u>State v. Ely</u>, 48 S.W.3d 710, 727 (Tenn. 2001)).

Tennessee Code Annotated section 40-18-110 states:

> When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

Tenn. Code Ann. § 40-18-110(a) (2015). Code Section 40-18-110 further provides:

> Prior to instructing the jury on the law, the trial judge shall give the parties an opportunity to object to the proposed lesser included offense instructions. If the defendant fails to object to a lesser included offense instruction, the inclusion of that lesser included offense instruction may not be presented as a ground for relief either in a motion for a new trial or on appeal. Where the defendant objects to an instruction on a lesser included offense and the judge does not instruct the jury on that offense, the objection shall constitute a waiver of any objection in the motion for a new trial or on appeal concerning the failure to instruct on that lesser included offense. The defendant's objection shall not prevent the district attorney general from requesting lesser included offense instructions or prevent the judge from instructing on lesser included offenses.

Tenn. Code Ann. § 40-18-110(d) (2015). When a trial court receives no written request from a party "specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought," the trial court may instruct the jury "on any lesser included offense or offenses, but no party shall be entitled to any lesser included offense charge." Tenn. Code Ann. § 40-18-110(b) (2015).

Whether the trial court properly instructed the jury is a mixed question of law and fact, which this court reviews de novo with no presumption of correctness. State v. Howard, 504 S.W.3d 260, 267 (Tenn. 2016) (citing State v. Thorpe, 463 S.W.3d 851, 859 (Tenn. 2015)). If a trial court does not instruct on a lesser-included offense and the issue is not waived, this court must determine whether the evidence supported an instruction on the lesser included offense and, if so, whether the omission of the instruction is harmless error. State v. Banks, 271 S.W.3d 90, 124 (Tenn. 2008).

At trial, the Defendant filed a written request asking that the trial court instruct the jury on the lesser-included offenses of simple possession and casual exchange. However, the trial court denied the Defendant's request based on its determination that the applicable statute of limitations barred the prosecution of the Defendant for those charges. We note that simple possession is a lesser-included offense of possession with intent to deliver as charged in Count 8, but this court has previously held that casual exchange is not a lesser-included offense of that charge. State v. Timothy Wayne Grimes, No. M2001-01460-CCA-R3-CD, 2002 WL 31373472, at *4 (Tenn. Crim. App. Oct. 16, 2002) (concluding that "casual exchange is not a lesser included offense of possession with intent to deliver"). Accordingly, we must determine whether the trial court erred by failing to instruct on the lesser-included offense of simple possession for Count 8.

### B. Statute of Limitations

Simple possession is a Class A misdemeanor offense. Tenn. Code Ann. § 39-17-418(c)(1). Tennessee Code Annotated section 40-2-102 states that a prosecution for a misdemeanor offense shall commence "within the twelve (12) months after the offense has been committed[.]" Tenn. Code Ann. § 40-2-102(a). Moreover, Tennessee Code Annotated section 40-2-104 provides that a prosecution is commenced

> by finding an indictment or presentment, the issuing of a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

Tenn. Code Ann. § 40-2-104.

The Defendant asserts that the prosecution was commenced—and the statute of limitations was tolled—by his appearance in court on April 13, 2014, when the State indicated that it intended to re-indict the Defendant in July. We disagree. Tennessee

- 46 -

Code Annotated section 40-2-104 clearly limits the commencement of prosecution by appearance to appearances in general sessions or municipal court. The prosecution commenced in this case when the grand jury indicted the Defendant in case number 8083 on July 7, 2014, more than twelve months after the Defendant committed the instant offenses. Therefore, the trial court correctly determined that the statute of limitations had run on the misdemeanor lesser-included offense of simple possession.

## B. Waiver

The statute of limitations for a criminal prosecution is "waivable, rather than jurisdictional," but such a "waiver [must] be knowingly and voluntarily entered." State v. Pearson, 858 S.W.2d 879, 887 (Tenn. 1993). Because the "protection of the defendant is a primary purpose of the statute of limitations," a "defendant who believes that a criminal statute of limitations no longer works to his advantage should be allowed to enter a knowing, voluntary, and intelligent waiver" thereof. Id. at 886-87. To determine whether a knowing and voluntary waiver of the statute of limitations exists, appellate courts utilize "the same standard applied in determining whether there has been an effective waiver as to fundamental rights." Id. at 887. The court in Pearson held that "a waiver of the statute of limitations will not be presumed where there is no evidence in the record to indicate that the defendant was made aware of the issue." Id.

In this case, the Defendant never made an affirmative waiver of his statute of limitations defense, despite having the opportunity to do so when the trial court indicated that it could not charge the misdemeanor lesser-included offenses due to the statute of limitations. Moreover, based on his argument on appeal, it is clear that the Defendant did not intend to waive the statute of limitations defense. In his brief, the Defendant asserts that the trial court should have charged simple possession and casual exchange but then vacated any resulting convictions for these offenses as nullities. Under these circumstances, we cannot conclude that the Defendant constructively waived the statute of limitations based on his written request for jury instructions on the misdemeanor offenses.

## C. Harmless Error

Finally, we agree with the State that any error by the trial court in declining to instruct on the lesser-included offense of simple possession is harmless beyond a reasonable doubt because the jury convicted the Defendant on the charged offense in Count 8. In order to convict the Defendant of the charged offense, the jury determined that the proof was sufficient to establish all the elements of that offense beyond a reasonable doubt. Moreover, by finding the Defendant guilty of the highest offense to the exclusion of the charged lesser-included offenses—possession with intent to deliver

cocaine in an amount less than 0.5 grams, attempt to possess within intent to deliver cocaine in the amount of 0.5 grams or more, and attempt to possess with intent to deliver cocaine in an amount less than 0.5 grams—the jury necessarily rejected all other lesser offenses. See State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998). The jury's disinclination to consider the lesser-included offenses that were instructed shows that it would not have returned a verdict on any omitted lesser-included offenses, including simple possession. See id. Thus, any error that might have occurred due to the trial court's not instructing on the time-barred lesser-included offense would amount to harmless error beyond a reasonable doubt. The Defendant is not entitled to relief.

## X. Reading of the Indictment

The Defendant next contends that the trial court erred when it allowed the State to read Counts 6 and 7 of the indictment—which stated that the Defendant had been convicted in 2009 of delivery of 0.5 grams or more of cocaine—at the beginning of the second phase of trial. The Defendant argues that because he agreed to stipulate as to his status as a felon, the trial court should have excluded any mention of his prior felony conviction under Rule 404(b) and Rule 609 of the Tennessee Rules of Evidence and asserts that the details of the prior conviction "unfairly prejudiced" the Defendant. The State replies that the trial court properly allowed the State to read the name and nature of the Defendant's prior felony conviction in the reading of the indictment.

In State v. Bane, 853 S.W.2d 483, 484 (Tenn. 1993), the Tennessee Supreme Court noted that the indictment "at best is a mere accusation to inform the jury of the charges against the defendant. It raises no presumption of guilt." Therefore, it concluded that merely reading the indictment to the jury was a permissible procedure. Id.

In this case, there is no indication that the prosecutor did anything other than simply read the indictment to the jury in line with Bane. Therefore, we discern no error in the trial court's allowing the State to read the indictment to the jury. Furthermore, as noted by the State, the trial court instructed the jury that the indictment was not evidence against the Defendant and created no inference of guilt. The jury was instructed to base its verdict on evidence and that it must not consider other information, and jurors are presumed to follow the instructions of the trial court. Henley v. State, 960 S.W.2d 572, 581 (Tenn. 1997). Because indictments are not evidence the Defendant's arguments based on Rules of Evidence 404(b) and 609 are inapplicable. This issue is without merit.

## XI. Cumulative Error

Finally, the Defendant contends that the cumulative effect of the alleged errors mandates reversal. The cumulative error doctrine recognizes that there may be many

errors committed in trial proceedings, each of which constitutes mere harmless error in isolation, but "have a cumulative effect on the proceedings so great at to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, there must have been more than one actual error during the trial proceedings. Id. at 77. Here, the Defendant has failed to show multiple instances of error sufficient to warrant reversal under the cumulative error doctrine. The Defendant is, therefore, not entitled to relief.

## Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.


_____
ROBERT L. HOLLOWAY, JR., JUDGE